The bill prayed a discovery, and that the defendants Elizabeth and Henry might be declared to be trustees for the plaintiff, and that all deeds executed in furtherance of the fraudulent combination might be delivered up to be canceled.
The bill was taken pro confesso as to Henry H. Cooke, who was examined as a witness, under an order to that effect.
The defendant Mark Cooke, against whom no decree was prayed, in his answer denied all knowledge of the matters set forth in the bill. *Page 56 
The defendant Elizabeth Yancy, in her answer, denied the plaintiff's title to be valid, but alleged that it was defective and void — a judgment against the heirs having been taken by default, some of whom (79) were infants. She admitted the death of her husband, as charged, and stated that her dower was assigned on 23 October, 1815, and that the sale for taxes took place on 8 November following; and insisted that the several acts of Assembly recited in the bill imposed upon her no obligation to pay the taxes charged upon the lots. She denied all fraud or combination for the purpose of procuring a sale of the lots for the taxes, and averred that she knew nothing of the sale, or of the purchase by Henry Cooke, until after it was over, but admitted that Henry Cooke had received from her the amount he gave for the lots, and had assigned to her, and that she had obtained a deed from the commissioners, of which the plaintiff had notice before his purchase; and she claimed to hold discharged of any trust for the plaintiff or any one else.
This answer was fully supported by the testimony of Henry H. Cooke and the other proofs taken in the cause, by which it appeared that the widow and children of Yancy lived on the lots after his death and until the execution sale.
The private acts of the General Assembly for the government of the city of Raleigh, and the by-laws of that corporation, were filed as exhibits. By them it was proved that the city taxes attached upon all the property within its limits on 1 April in every year.
It is stated that Sterling Yancy, the owner of the lots in question, died about January, 1815, leaving his widow and children in possession thereof; that judgment was obtained against his (81) administrator, from which process issued against the lots in the hands of the heirs, and that the complainant became the purchaser; that the lots were sold for taxes about 8 November, 1815; that the deed for them was made by consent of the purchaser to the defendant Elizabeth, and that the widow's dower was laid off between the courts which sat in August and November.
It must be admitted that all the right the heirs at law of Sterling Yancy had in the lots in dispute was acquired by the plaintiff when he became the purchaser of them. It is therefore necessary to ascertain what that right was. Upon the death of Sterling Yancy, the title to the lots descended to his heirs at law, who, together with the widow, were in possession of them. They descended, however, to the heirs at law subject to the widow's right of dower; but until dower was allotted to *Page 57 
her, the title to them was in the heirs. By the act of 1803, made for the government of the city of Raleigh, it was required that all taxable property should be given in on or before the first of April. By the same act it is declared "that every tenant occupying a house or houses, lot or lots, shall be liable to pay the tax laid upon such house, etc., and on failure of the proprietor of any lot to pay the annual tax thereon, etc., on or before 1 August in every year, the commissioners of the city are authorized to sell the same," etc. The act of 1806, also made for the government of the city of Raleigh, declares "that in all cases where the owner of any lot, or the occupants thereof, shall fail to pay the taxes, so much of such lot as shall be sufficient to pay the taxes shall be sold."
I think but little doubt can be entertained that the heirs at law of Sterling Yancy were the tenants and proprietors of the lots, within the words and meaning of both these acts. It was their duty, then, to give in their lots as taxable property on 1 April, and to pay the (82) taxes before 1 August in the same year. This, however, was not done, and the lots were afterwards sold, before the purchase made by the complainant. At the time of his purchase the heirs at law had no right to the property; it had been lost by the sale for the taxes.
We are next to ascertain what remedy the complainant has against the widow.
At common law the widow was entitled to her quarantine, and in the meantime to be supported by the heir; and before the expiration of her quarantine it was the duty of the heir to put her in possession of her dower. Our law makes provision for the widow's support for one year, and points out the mode by which she shall be put in possession of her dower. By these laws the right of the heirs and the widow are not altered; perhaps the time of her quarantine is thereby enlarged. Before the widow has her dower allotted to her she is a mere occupant; she has no right or title to the land, or to one part of it in preference to another; she has a right to dower in one-third part of it, but what third part that may be depends upon the allotment of it, and when that is made, she claims and is in under her husband. In the present case the widow was not bound to give in the land for taxes, nor was she bound to give in one-third of it. It is true, she was an occupant, but the heirs at law were occupants, also, and the legal title was in them. When the land was sold for taxes, that sale divested the right of the heirs, and her claim to dower was swept off with it. The purchaser for the taxes had a preferable right to either of them, and for this the widow was not blameable; because if she was not bound either to enter the land for taxes or to pay them, of course for not paying them she was in no fault; if she was in no fault, it is difficult to see how she committed one in taking a deed from the officer who sold them for the taxes, by the consent *Page 58 
(83) of Cooke, who bid them off. It is then upon that right she stands, and her dower right forms no part of it. It is not material, when the complainant purchased, whether he had notice of the sale to Cooke or not. He does not deny it, and she states in her answer that he had notice. The bill prays that she may be held as a trustee for the complainant, and compelled to convey her title to him, because she fraudulently acquired that title. This, I think, is not established either by the law or the fact of the case. It will be understood that no opinion is given on the validity of her title. Whatever it is, I am of opinion she should not be deprived of it by the decree of this Court. Neither is it intended to give any opinion on the plaintiff's title at law, in case that of the defendant was removed out of his way.
I am of opinion the bill should be dismissed.
TAYLOR, C. J., concurred in opinion with HALL, J.